# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
|                                                                    ) | |
|      Plaintiff,                       ) | |
|                                                                    ) | |
| -vs-                                                            ) | No. CR-19-404-D |
|                                                                    ) | |
| THOMAS JOHNSON, SR.,                        ) | |
|   a/k/a Thomas Clark Johnson,         ) | |
|   a/k/a Thomas C. Johnson,              ) | |
|   a/k/a Tom Johnson,                         ) | |
|   a/k/a King Redneck,                        ) | |
|                                                                    ) | |
|      Defendant.                  ) | |

## UNITED STATES' SENTENCING MEMORANDUM

ROBERT J. TROESTER
United States Attorney

*s/ Jessica L. Perry*
JESSICA L. PERRY
Oklahoma Bar No. 22681
Assistant United States Attorney
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8743 (Office)
(405) 553-8888 (Fax)
Jessica.Perry2@usdoj.gov

i

## Table of Contents

        **Page**

BACKGROUND ..................................................................................................................... 1

    A.    Factual Background ............................................................................................ 1

    B.    The PSR ............................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

I.    The PSR Correctly Applies the Vulnerable Victim Enhancement ............................................................................................................. 5

II.    A Significant Term of Imprisonment is Appropriate to Reflect the Seriousness of the Offense, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct ................................................... 11

    A.    The Seriousness of the Offense and the Need to Provide Just Punishment ........................................................................................................ 13

    B.    The Need to Afford Adequate Deterrence to Criminal Conduct ................ 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*United States v. Blaze*,
   78 F. App'x 60 (10th Cir. 2003) ................................................................. 6

*United States v. Booker*,
   543 U.S. 220 (2005) .................................................................................. 12

*United States v. Hampton*,
   778 F. App'x 103 (3d Cir. 2019) ........................................................... 10-11

*United States v. Hardesty*,
   105 F.3d 558 (10th Cir. 1997) ................................................................. 10

*United States v. Shumway*,
   112 F.3d 1413 (10th Cir. 1997) ................................................................. 6

*United States v. Zats*,
   298 F.3d 182 (3d Cir. 2002) ................................................................. 6, 10

**Federal Statutes**

18 U.S.C. § 371 ................................................................................... 3, 5, 12

18 U.S.C. § 1028A ..................................................................................... 2

18 U.S.C. § 1028 ........................................................................................ 2

18 U.S.C. § 1014 ........................................................................................ 2

18 U.S.C. § 1343 ..................................................................................... 2, 3

18 U.S.C. § 1344 ........................................................................................ 2

18 U.S.C. § 1349 ................................................................................................................ 3

18 U.S.C. § 3553 ..................................................................................................... 1, 12, 14

**Federal Rules**

U.S.S.G. § 3A1.1 ........................................................................................................... 4-6

U.S.S.G § 1B1.3 ................................................................................................................ 6

U.S.S.G. § 2B1.1 ............................................................................................................... 4

U.S.S.G. § 3B1.4 ............................................................................................................... 4

U.S.S.G. § 2X1.1 ............................................................................................................... 4

**Other Authorities**

Okla. Stat. tit. 68, § 2906 .................................................................................................. 7

"Home title fraud on the rise, experts say,"
www.11alive.com/article/news/investigations/thieves-stealing-homes-georgia/85-
3143bf23-0255-49a0-ab73-bedff5360421 (May 4, 2022) ............................................... 15

"Thieves are stealing homes in Georgia: How they're getting away with it, and how you
can protect yourself," www.wxyz.com/news/local-news/home-title-fraud-on-the-rise-
experts-say (Apr. 16, 2022) ............................................................................................. 15

## UNITED STATES' SENTENCING MEMORANDUM

Over a period of nearly five years, Thomas Johnson, Sr., along with his wife and mother-in-law, peddled false documents and lied to victims, government agencies, judges, and banks in order to steal real properties, personal properties, bank accounts, and mineral rights from victims. In addition to fake companies, the conspirators also used Tom Johnson's legitimate companies, such as Showtech Distributors, to facilitate the scheme. For his part, Mr. Johnson lied to Bank of Oklahoma to withdraw funds from a deceased victims' accounts, and he recruited investors. He also lied to the Marshall County Sheriff's office when it began investigating the scheme.

As set forth below, the Section 3553(a) sentencing factors demand a significant term of imprisonment to take into account the seriousness of the offense, to sufficiently punish the defendant for his criminal conduct, and to deter others. Thus, the United States contends a sentence of **five years**—the statutory maximum—would be sufficient, but not greater than necessary, to satisfy the Section 3553(a) sentencing factors.

## Background

### A. Factual Background

On June 16, 2020, a federal grand jury returned an 18-count superseding indictment charging Thomas Johnson, Sr. ("Tom Johnson"), his wife Laura R. Johnson ("Laura Johnson"), his mother-in-law Cheryl Ashley ("Mrs. Ashley") (collectively "Defendants"). As to Tom Johnson, the superseding indictment charged 10 counts: conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count 1); bank fraud in violation of

1

18 U.S.C. § 1344(2) (Counts 5 and 6); aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts 7 and 8); false statement to a financial institution in violation of 18 U.S.C. § 1014 (Count 9); wire fraud in violation of 18 U.S.C. § 1343 (Counts 10, 11, 12); and conspiracy to commit identity theft in violation of 18 U.S.C. § 1028(f) (Count 18). (Doc. 68.)

The superseding indictment alleges that Defendants conspired to obtain and attempt to obtain money and property though the use of fraudulent documents, many of which contained forged signatures and forged notary seals, including warranty deeds, confidential documentary stamp tax affidavits, eviction notices, mortgages, as well as district court pleadings and exhibits. (*Id.* ¶ 12.) Defendants targeted for takeover properties subject to foreclosure or tax sales. In some instances, Defendants placed inspection notices or eviction notices on properties to cause the true owners to vacate their homes. (*Id.* ¶¶ 12, 72-73, 106, 110, 125.) Upon gaining access to the targeted properties, Defendants entered the homes and used the contents of the homes for their personal benefit.

As to Tom Johnson, the superseding indictment also alleges that he executed a scheme to defraud Bank of Oklahoma ("BOK") by depositing two checks drawn on Mrs. J.M. Bartrug's bank account knowing the checks were forged. (*Id.* ¶¶ 168-174.) He was also charged with aggravated identity theft for his use of a means of identification—Mrs. Bartrug's name and signature—during and in relation to the bank fraud. (*Id.* ¶¶ 175-176.) The superseding indictment also alleges that Mr. Johnson made false statements to a BOK

2

investigator when he stated the checks drawn on Mrs. Bartrug's account represented payment for equipment Mrs. Bartrug had purchased for her church. (*Id.* ¶¶ 177-180.) In fact, as Mr. Johnson well knew, the checks were forged and Mrs. Bartrug was deceased. (*Id.*) Finally, the wire fraud counts relate to Tom and Laura Johnson's use of the proceeds from Mrs. Bartrug's bank account to make payment toward their mortgage and credit card. (*Id.* ¶¶ 182-187.)

On November 17, 2020, Tom Johnson pleaded guilty to a superseding information charging conspiracy in violation of 18 U.S.C. § 371. (Docs. 87, 117.) The superseding information covered the same conduct as Count 1 of the superseding indictment, but it provided Mr. Johnson with a five-year statutory maximum under 18 U.S.C. § 371, as opposed to a thirty-year statutory maximum under 18 U.S.C. § 1349.[1] As part of the Plea Agreement, Mr. Johnson admitted that beginning in and about 2014 and continuing into 2019, he committed the offense of conspiracy to commit mail and wire fraud as set forth in the superseding information. (Doc. 18 at ¶ 2.)

**B. The PSR**

After Tom Johnson entered his guilty plea, the United States Probation Office prepared an initial Presentence Investigation Report. (Doc. 124.) Both parties submitted corrections and/or objections, which the Probation Officer incorporated into the final

---

[1] The statutory maximum increased to "not more than 30 years" because the offense "affects a financial institution." 18 U.S.C. 1343.

3

Presentence Investigation Report ("PSR"). (Doc. 143.) The PSR applies a base offense level of 6, pursuant to U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2). (Doc. 143, ¶ 153.) The PSR also contains the following enhancements:

- PSR ¶154 – A 16-level increase for loss amount, pursuant to U.S.S.G. § 2B1.1(b)(1)(I) (representing a loss of more than $1,500,000 but less than $3,500,000); and

- PSR ¶155 – A 2-level increase because the offense involved 10 or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i); and

- PSR ¶156 - A 2-level increase because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization, pursuant to U.S.S.G. § 2B1.1(b)(9)(A); and

- PSR ¶157 - A 2-level increase because the offense involved sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C); and

- PSR ¶158 - A 2-level increase because the offense involved the unauthorized use of any means of identification unlawfully to produce or obtain any other means of identification, pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i); and

- PSR ¶159 - A 2-level increase because the defendant knew or should have known the victims of the offense were vulnerable, pursuant to U.S.S.G. § 3A1.1(b)(1); and

- PSR ¶160 - A 2-level increase because the offense involved the use or attempted use of a minor to commit the offense or assist in avoiding detection of, or apprehension for, the offense, pursuant to U.S.S.G. § 3B1.4.

*Id.* Mr. Johnson received a decrease of 3 levels for acceptance of responsibility. (*Id.* ¶¶ 164-165.) Accordingly, his total offense level is 31. Because he is criminal history category I, the PSR calculates the advisory guideline range as 108 to 135 months. (*Id.* ¶

4

200.) However, the statutory maximum is five years, or 60 months of imprisonment. 18 U.S.C. § 371.

Mr. Johnson objects to the 2-level vulnerable victim enhancement in PSR ¶ 159. (Doc. 143 at 57-58.) He also objects to "the stated restitution or any restitution amount."[2] (*Id.* at 59.)

For the reasons set forth below, the United States believes the PSR correctly calculates Mr. Johnson's total offense level and asks the Court to apply all the PSR enhancements at sentencing. After considering those enhancements, the United States asks the Court to impose a sentence of **five years**—a sentence well below the advisory guideline range.

## ARGUMENT

I. **The PSR Correctly Applies the Vulnerable Victim Enhancement.**

Paragraph 159 of the PSR applies a 2-level enhancement because Tom Johnson and his co-conspirators knew or should have known the victims of the offense were vulnerable, pursuant to U.S.S.G. § 3A1.1(b)(1). (Doc. 143, ¶159.) According to application note 2, a

---

[2] The United States has not addressed restitution in this Sentencing Memo. The United States is in discussions with the Department of Justice's Money Laundering and Asset Forfeiture Section (MLARS) about how best to address forfeiture and restitution in this case so that the real properties, where possible, can be returned to victims. If the United States can forfeit the real properties and use the remission process to return the real properties to victims, the amount owed by the Defendants in restitution would be impacted. Accordingly, the Unites States will supplement this memo as soon as further guidance is provided by MLARS about how to proceed.

"vulnerable victim" means (1) "a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)"; and (2) a victim "who is unusually vulnerable due to *age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct*." U.S.S.G. § 3A1.1 application note 2 (emphasis added). The Tenth Circuit has explained the purpose of this enhancement:

> The status of "vulnerable victim" hinges on the idea that some characteristic renders a victim "particularly susceptible" to the criminal conduct. In other words, the "vulnerable victim" is someone who is unable to protect himself or herself from criminal conduct, and is therefore in need of greater societal protection than the average citizen.

*United States v. Shumway*, 112 F.3d 1413, 1423 (10th Cir. 1997).

Mr. Johnson objects to this enhancement because he claims "[n]o discovery was produced showing Mr. Johnson targeted certain individuals based upon their age, physical or mental condition or his knowledge they were particularly susceptible to criminal conduct." (Doc. 143 at 57.) Mr. Johnson is arguing the government must prove he targeted victims because of their vulnerability. But "[t]he Guidelines do not require that the defendant actually target [] victims or otherwise seek them out *because of* their vulnerability." *United States v. Zats*, 298 F.3d 182, 189 (3d Cir. 2002); *see also United States v. Blaze*, 78 F. App'x 60, 64 (10th Cir. 2003) (unpublished) (acknowledging that the Sentencing Commission revised § 3A1.1 "to clarify that there is no targeting requirement.") What matters is whether the defendant "knew or should have known" about the victim's vulnerability. *Zats*, 298 F.3d at 188-189. In making that determination,

6

"negligence is a sufficient level of culpability." *Id.* at 189. Moreover, "[t]hat knowledge or notice could arise during the course of an ongoing offense such as fraud . . . even if the defendant did not initially know of the victim's vulnerability." *Id.* at 190 (internal citations omitted).

Mr. Johnson also relies upon a state statute, Okla. Stat. tit. 68, § 2906, that allows financially vulnerable individuals—those over age 65 or totally disabled who make less than $12,000 per year—to claim an exemption from property taxes. (*Id.* at 57-58.) His reliance on 68 O.S. § 2906 is inapposite. If anything, the state statute confirms that victims over age 65 who make too little to pay their property taxes are, in fact, financially vulnerable. Their age, health status, and financial vulnerability made them less likely to avail themselves of a property tax exemption, just as they were less likely to have the resources to defend themselves from title fraud. Defendants knew this in many instances (*e.g.*, Shorters, Bartrug, Perkins, Wallace) and took advantage of their victims' vulnerability.

For example, the first victims targeted by Defendants were J.L. and J.M. Shorter. Defendants knew the Shorters were elderly, in poor health, and financially vulnerable. Indeed, Mortgage Clearing Corporation had sued the Shorters in a foreclosure action due to nonpayment. (Doc. 88, ¶¶ 30-44.) Cheryl Ashley first attempted to purchase the Shorter's residence in the foreclosure sale, but she failed to remit the full amount owed. (*Id.* ¶¶ 33-34.) Simultaneously, Mr. Johnson's wife Laura Johnson attempted

unsuccessfully to payoff Mortgage Clearing Corporation in exchange for a warranty deed. When Mrs. Johnson was unable to pay off the mortgage, Defendants caused a fraudulent warranty deed (notarized by Mrs. Ashley) to be filed, transferring the Shorters' property to Tom Johnson's company Showtech Distributors. Warranty Deed filed May 3, 2014, attached as Ex. 1.[3] They also asked a family friend, C. Taylor, to sign a second fraudulent warranty deed transferring the property from Showtech Distributors to "Help and Hope LLC." Warranty Deed filed Oct. 16, 2014, attached as Ex. 2. Notably, prior to filing the first fraudulent deed, Cheryl Ashley acknowledged in an email that she knew Mr. Shorter "had a stroke and was in rehabilitation the last I heard." Email from C. Ashley dated Oct. 1, 2014, attached as Ex. 3. Similarly, Laura Johnson and Mrs. Ashley told C. Taylor that the Shorters were an elderly couple, one of whom was in a nursing home. *See* Memorandum of Interview for C. Taylor dated July 5, 2018, attached as Ex. 4. Defendants also knew that Mr. and Mrs. Shorter were unable to manage their own affairs because they communicated with the Shorters' daughter, K. Wiedmer, and attempted to negotiate transfer of the property with her. *See, e.g.,* Email from L. Johnson to K. Wiedmer dated Oct. 1, 2014, attached as Ex. 5; Message to Nia Forte dated Dec. 10, 2014, attached as Ex. 6 (containing chats advising Kelly Wiedmer to contact the mortgage company and tell them she has "power of attorney for [her] parents" and suggesting the Shorters could "put funds

---

[3] The Shorters' signatures on the deed were clearly copied and pasted from their mortgage documents because the signatures still state "Borrower" next to each of their names.

toward medical bills.")  The Shorters' multiple vulnerabilities made them unusually susceptible to Defendants' real estate fraud scheme.  They had neither the resources, nor the physical and mental fitness to defend themselves.

Similarly, the second property targeted by Defendants belonged to Mrs. J.M. Bartrug. (Doc. 68, ¶¶ 45-58.)  Laura Johnson and her mother identified the property from the list of properties to be auctioned at a tax sale by the Oklahoma County Treasurer.  While researching the property, Mrs. Ashley sent an email to Laura Johnson stating: "Bartrug has a phone number of 728-0236 no email **89 year old lady**." Email from C. Ashley to L. Johnson dated 06/03/15, attached as Ex. 7 (emphasis added).  In fact, Mrs. Bartrug had already died three years earlier.  Defendants knew, at a minimum, that Mrs. Bartrug was elderly, when they filed the first fraudulent document with the Oklahoma County Clerk— an "Affidavit of Surviving Joint Tenant" signed by "Laura R. Johnson as Attorney in Fact" in October 2016.  Affidavit of Surviving Joint Tenant filed Oct. 26, 2016, attached as Ex. 8.  By the time they entered her home and stole the personal property within it, they knew Mrs. Bartrug was deceased and her Estate had no known heirs-at-law. (Doc. 143, ¶¶ 45-54.)  Defendants took advantage of this vulnerability when they attempted to access Mrs. Bartrug's bank accounts. Laura Johnson created a fake Last Will and Testament naming herself as the heir to the Estate and hid her true will from the probate court and the late-Mr. Bartrug's nephew, Charles Bartrug, who, unbeknownst to him, was a legatee in the

9

true will. (*Id.*) The Bartrug Estate was unusually susceptible to loss because there was no one available to defend it.

A combination of advanced age, medical infirmity, and financial problems is sufficient to classify as victim as "unusually vulnerable." *See, e.g., United States v. Hardesty*, 105 F.3d 558, 560 (10th Cir. 1997) (affirming enhancement because victims were 90 years old, and the victim's "medical and physical needs as they advanced in years, and their obvious inexperience in finances" rendered them vulnerable victims in embezzlement scheme). Moreover, financial vulnerability is one way a victim can be "otherwise particularly susceptible." *United States v. Zats*, 298 F.3d 182, 188 (3d Cir. 2002). Here, the scheme targeted victims who were financially vulnerable—those who were unable to pay their property taxes and whose homes were subject to tax auctions. As Defendants knew, some of the victims were unable to pay property taxes because they were ill, elderly, or even deceased. They knew and should have known that victims' inability to pay property taxes made them financially vulnerable as well. Unlike other forms of property, real property generally requires court intervention to resolve disputes over ownership. Indeed, many of the victims were unable to file or complete quiet title actions to reclaim their property because they did not have the means to pay a lawyer. (*E.g.,* Doc. 88, ¶ 68 (noting Mr. Weems's quiet title lawsuit is *still* pending after his lawyer withdrew).)

The Third Circuit has held a district court did not err in applying the vulnerable victim enhancement in a nearly identical case. *United States v. Hampton*, 778 F. App'x

10

103 (3d Cir. 2019) (unpublished).  In *Hampton*, the defendant was convicted of conspiracy, wire fraud, and aggravated identity theft in a scheme to steal, encumber, and sell real properties.  The defendant and his co-conspirators "located seemingly vacant property and filed fraudulent deeds purportedly signed by the property owners to obtain apparent title to the property." *Id.* at 104.  The Third Circuit found the district court "did not clearly err by finding that the victims were susceptible to the criminal conduct because they were unable—due to age, infirmity, lack of sophistication, or financial means—to maintain their properties in the first instance and to retain them once stolen." *Id.* at 106.  Moreover, the Third Circuit found the district court did not err by finding the defendant "knew or should have known that he was preying upon vulnerable victims" who were "economically or otherwise vulnerable" because the defendant knew he was obtaining properties where owners had just died, were elderly, or were unable to keep up their properties. *Id.* at 106-107.  For the same reasons, the Court should apply the vulnerable victim enhancement here.

II.  **A Significant Term of Imprisonment is Appropriate to Reflect the Seriousness of the Offense, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct.**

As the PSR is currently written, Defendant's advisory guideline range of imprisonment is 108 to 135 months. (Doc. 143 at ¶200.)  Thus, the advisory guideline range is significantly above the statutory maximum for the count of conviction, which is 5 years

(or 60 months). 18 U.S.C. § 371. The United States contends a sentence of five years is necessary to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a).

Although the Sentencing Guidelines are no longer mandatory, they continue to play a critical role in sentencing to achieve the underlying purpose of the Sentencing Reform Act—avoiding disparity by ensuring similar sentences for those convicted of similar crimes. *United States v. Booker*, 543 U.S. 220, 252 (2005). The sentencing process requires a district court to correctly calculate the advisory guideline range and then consider the statutory factors set forth in 18 U.S.C. § 3553(a). Those factors require a sentencing court to consider the need for the sentence –

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). In addition to the above factors, a sentencing court is directed to consider (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the sentencing guidelines and policy statements; (4) the need to avoid unwarranted sentencing disparities; and (5) the need to provide restitution. *Id.* § 3553(a).

Applying these factors, the government contends a significant period of incarceration is necessary to take into account the seriousness of the offense and to sufficiently punish Mrs. Ashley and deter others from criminal and obstructive conduct.

### A. The Seriousness of the Offense and the Need to Provide Just Punishment

The seriousness of Mr. Johnson's fraud is demonstrated by the significant actual and intended loss (*see* PSR ¶¶ 136-137) to at least 15 victims, and by the brazen nature in which he and his co-defendants lied repeatedly to victims, third-parties, government agencies, and banks. Mr. Johnson played a critical role in attempting to recruit investors to help "flip" the stolen properties. Email from M. Carattini to T. Johnson dated June 7, 2018, attached as Ex. 9. In doing so, he lied by claiming that the properties were being lawfully obtained through tax sales. He also played a critical role in trying to access the money they discovered in Mrs. Bartrug's bank accounts. Chats between T. Johnson and L. Johnson, attached as Ex. 10 ("There is over $100K in her MidFirst account!!!"). He personally deposited forged checks drawn on Mrs. Bartrug's account at BOK and then withdrew a portion of those funds. BOK Report #2106-034654, attached as Ex. 11; BOK Surveillance Footage, dated July 26, 2016, attached as Ex. 12. After the checks were returned, a bank investigator contacted Mr. Johnson. Mr. Johnson lied to the investigator and told him that Mrs. Bartrug purchased equipment for her church and must have written checks from the wrong account. In reality, Mr. Johnson knew Mrs. Bartrug was dead and the checks were forged.

Mr. Johnson also played a critical role in taking over the Riggs property in Marshall County. Victim J. Riggs owned her property after her father R. Bishop deeded it to her in 2014. In 2016, Mr. Bishop discovered that a false deed had been filed on the property, and he contacted the Marshall County Sheriff's office. Mr. Johnson lied to the Marshall County Sheriff and stated he purchased the Riggs property at a tax sale, and he claimed *he* was a victim of someone trying to steal *his* home. Marshall County Sheriff's Office report, dated June 9, 2017, attached as Ex. 13; Radio Log dated June 10, 2017, attached as Ex. 14.

Overall, the conduct in this case was not an isolated occurrence or a mere lapse in judgment. It involved repetitive conduct and compulsive lies over a period of years. Mr. Johnson was a member of a conspiracy that was sophisticated—it required intricate research about the victims and their heirs and knowledge of the process for filing and recording property records with county governments. The Defendants employed fake companies and identities, changed locks and utilities on the stolen properties, and they falsified real estate documents and legal pleadings. They kicked victims out of their personal homes and stole their belongings, including sentimental items that are difficult to value. The breadth and depravity of their conduct deserves a significant punishment to reflect the seriousness of the offense.

### B. The Need to Afford Adequate Deterrence to Criminal Conduct

In addition, the Section 3553(a) factors require the Court to consider not only specific deterrence, but also general deterrence. The need for general deterrence is

particularly acute here, where real estate fraud schemes are on the rise.[4]  County clerks need to have confidence that their official records accurately reflect who owns real estate. Accordingly, a significant term of imprisonment is necessary to send a powerful message to others who may consider participating in a similar title fraud scheme that their conduct will be punished severely, even if they believe that their conduct is difficult to detect.

## CONCLUSION

Mr. Johnson's lies to victims, government agencies, judges, banks, and third parties justify a significant term of imprisonment.  Accordingly, the United States asks the Court to apply all the enhancements set forth in the PSR and render a sentence of five years of imprisonment.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/*JESSICA L. PERRY*
JESSICA L. PERRY
Oklahoma Bar Number:  22681
ASSISTANT U.S. ATTORNEY
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
Jessica.Perrry2@usdoj.gov

---

[4] *See, e.g.,* "Home title fraud on the rise, experts say," *available at* https://www.wxyz.com/news/local-news/home-title-fraud-on-the-rise-experts-say (Apr. 16, 2022); "Thieves are stealing homes in Georgia: How they're getting away with it, and how you can protect yourself," *available at* https://www.11alive.com/article/news/investigations/thieves-stealing-homes-georgia/85-3143bf23-0255-49a0-ab7e-bedff5360421 (May 4, 2022).

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing. Based on the records currently on file, the Clerk of court will transmit a Notice of Electronic Filing to the following ECF registrant:

Lance B. Phillips, Counsel for Defendant Thomas Johnson, Sr.

                                                s/JESSICA L. PERRY
                                                JESSICA L. PERRY
                                                Assistant U.S. Attorney